IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHRISTINE STONE,                       :
                                       :
        Plaintiff,                     :
                                       :
v.                                     :     CIVIL ACTION NO.
                                       :     1:11-CV-00081-RWS
THE BANK OF NEW YORK                   :
MELLON, N.A., f/k/a the Bank of        :
New York Trust Company, N.A.,          :
*et al.*,                              :
                                       :
        Defendants.                    :

## ORDER

This case comes before the Court on Plaintiff's Application to Appeal In

Forma Pauperis [68].  After reviewing the record, the Court enters the following

Order.

### Background[1]

## I.      Factual Background

On December 17, 2004, Plaintiff Christine Stone ("Plaintiff") obtained a

mortgage from Defendant Popular Financial Services, LLC, which was serviced

by Defendant Popular Mortgage Servicing, Inc. (collectively, "PMSI") from

_____

[1]Much of the following background is taken from the Court's July 29, 2011
Order [36].

December 17, 2004, until October 31, 2008.  (Dkt. [2] ¶ 15; Dkt. [3-2, 3-3]).

The loan was secured by real property located at 2604 Canopy Lane, Marietta,

Georgia 30066 ("Property").  (Id.)  Defendant Mortgage Electronic Registration

Systems, Inc. ("MERS") was appointed as nominee for the originating lender,

PMSI, by virtue of the Security Deed.  (Dkt. [3-3].)   Plaintiff made her

scheduled payments through January 2008.  (Dkt. [1-1] at 46.)  In May 2008,

PMSI contacted Plaintiff and indicated its willingness to review the loan for

settlement payoff.  (Id.)  On November 1, 2008, servicing rights in the loan

were transferred to Defendant Litton Loan Servicing, LP ("Litton").  (Dkt. [2]

¶ 15.)  Plaintiff did not reach a settlement agreement with PMSI prior to

transfer.  (Id. at 48.)  Litton communicated with Plaintiff in February 2009 and

offered a compromise settlement in the amount of $600,000.  (Dkt. [2], Ex. H,

at 46.)  Plaintiff does not plead that she tendered the $600,000, which was

required for a settlement to be reached.  (Id.)

On June 2, 2008, MERS, on behalf of PMSI, assigned its interest in the

loan to Defendant Bank of New York Mellon ("BNY"). (Dkt. [2], Ex. K, at 48.)

Plaintiff subsequently defaulted on the loan, (Dkt. [2] ¶ 47), and on February 2,

2010, BNY foreclosed on the Property.  (Dkt. [3-4].)

2

## II.     Procedural Background

On November 15, 2010, Plaintiff filed this action against BNY, JPMorgan Chase Bank, N.A. ("JPMorgan"), MERS, Prommis, Litton, and PMSI (collectively, "Defendants") in the Superior Court of Cobb County, asserting numerous claims under federal and state law.  (Dkt. [2] ¶¶ 30-138.) After removing the case, on January 20, 2011, BNY, JPMorgan, MERS, and Litton filed a Motion to Dismiss Plaintiff's Complaint [3], and Prommis later filed its own Motion to Dismiss Plaintiff's Complaint [5], which adopted the arguments set forth in the other Motion to Dismiss [3].  In February 2011, Plaintiff filed her Memorandum of Law in Support of Remanding Back to Superior Court of Cobb County [7] and a Request for Entry of Default Against Defendants Popular Financial Services, LLC and Popular Mortgage Servicing, Inc. [18].  Finally, on March 7, 2011, Plaintiff filed a Motion to Recuse [27].

On July 29, 2011, the Court denied most of Plaintiff's motions but reserved ruling on Plaintiff's Request for Entry of Default [18] until she submitted proof of service on PMSI to the Court.  (Dkt. [36].)  After she submitted proof that she had served PMSI through the Secretary of State of Georgia, the Court ordered the entry of default on September 6, 2011.  On

3

PMSI's motion, the Court later found service insufficient and set aside the entry of default on June 28, 2012.  Plaintiff filed a Motion for Reconsideration [53], which the Court denied on September 13, 2012.

Nearly a year later, on August 7, 2013, the Court issued an Order [56] directing the parties to show cause why this action should not be dismissed for want of prosecution.  After considering the parties' responses and the full history of the case, on October 25, 2013, the Court dismissed the action without prejudice.  In dismissing the case, the Court noted that Plaintiff had not taken steps to perfect service on PMSI even though she "filed a Motion for Default Judgment [62] relying on service of PMSI that the Court previously found inadequate."  (Dkt. [65] at 2.)  Following dismissal, on November 22 Plaintiff filed her Application to Appeal In Forma Pauperis [68].

### Discussion

Applications to appeal *in forma pauperis* are governed by 28 U.S.C. § 1915 and Federal Rule of Appellate Procedure 24.  In pertinent part, § 1915 provides:

> (a)(1) [A]ny court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment

4

of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.[2]

. . .

(3) An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.

Similarly, Federal Rule of Appellate Procedure 24 provides:

(1) . . . [A] party to a district-court action who desires to appeal in forma pauperis must file a motion in the district court. The party must attach an affidavit that:
    (A) shows . . . the party's inability to pay or to give security for fees and costs;
    (B) claims an entitlement to redress; and
    (C) states the issues that the party intends to present on appeal.

. . .

(3) . . . A party who was permitted to proceed in forma pauperis in the district-court action . . . may proceed on appeal in forma pauperis without further authorization, unless: (A) the district court--before or after the notice of appeal is filed--certifies that the appeal is not taken

---

[2] Although § 1915(a) states that the affidavit must include "a statement of all assets [the] 'prisoner' possesses," this provision applies to all persons seeking to proceed *in forma pauperis*. See Mitchell v. Farcass, 112 F.3d 1483, 1491 n.1 (11th Cir. 1997) (Fay, J., concurring); see also Floyd v. United States Postal Serv., 105 F.3d 274, 275 (6th Cir. 1997) ("Despite the use of the term 'prisoner possesses,' we conclude that a typographical error in the final version of the statute occurred and that Congress actually intended the phrase to be 'person possesses.' ").

in good faith . . . and states in writing its reasons for the certification or finding . . . .

Thus, both § 1915(a) and Rule 24 make clear that two requirements must be satisfied for a party to prosecute an appeal *in forma pauperis*.  First, the party must show an inability to pay.  Second, the appeal must be brought in good faith.  Because this is the first determination of Plaintiff's *in forma pauperis* status in these proceedings, the Court must assess both requirements.

## I.    Inability to Pay

First, Plaintiff has submitted an affidavit demonstrating her inability to pay the filing fee required for an appeal.  The Court finds that Plaintiff has made the requisite showing and thus turns to the good faith requirement.

## II.    Requirement of Good Faith

### A.    Legal Standard

An appeal may not be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); FED. R. APP. P. 24(3).  A party demonstrates good faith by seeking appellate review of any issue that is not frivolous judged under an objective standard.  See Coppedge v. United States,

369 U.S. 438, 445 (1962); Busch v. County of Volusia, 189 F.R.D. 687, 691

(M.D. Fla. 1999); United States v. Wilson, 707 F. Supp. 1582, 1583 (M.D. Ga.

1989), aff'd, 896 F.2d 558 (11th Cir. 1990).  An issue is frivolous when it

appears that the legal theories are "indisputably meritless."  See Neitzke v.

Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th

Cir. 1993); see also Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (an

in forma pauperis action is frivolous, and thus not brought in good faith, if it is

"without arguable merit either in law or fact"); Bilal v. Driver, 251 F.3d 1346,

1349 (11th Cir. 2001) (same).  "Arguable means capable of being convincingly

argued."  Sun v. Forrester, 939 F.2d 924, 925 (11th Cir. 1991) (per curiam).

Where a claim is arguable, but ultimately will be unsuccessful, it should be

allowed to proceed.  See Cofield v. Alabama Pub. Serv. Comm'n., 936 F.2d

512, 515 (11th Cir. 1991).

    B.     Analysis

Plaintiff has not pointed to any specific issues she wishes to raise on

appeal, instead summarily stating that she wishes to appeal the orders discussed

below.  Nevertheless, the Court examines each order for any non-frivolous issue

that could be raised on appeal.

### 1.    Appeal of Order [9] Granting Extension of Time

On February 14, 2011, the Court granted Defendant Prommis Solutions,

LLC's Motion for Enlargement of Time [4].  Because such an order is

discretionary and Plaintiff has not identified any abuse of that discretion, an

appeal of this issue is legally meritless and not brought in good faith.

### 2.    Appeal of Order [36] Resolving Various Motions

On July 29, 2011, the Court entered an Order [36] denying Plaintiff's

Motion for Temporary Restraining Order and/or Preliminary Injunction [2],

Plaintiff's Motion to Remand [7], and Plaintiff's Motion to Recuse [27].  The

Court also granted both Defendants BNY, JP Morgan, MERS, and Litton's

Motion to Dismiss [3] and Defendant Prommis's Motion to Dismiss [5], but

reserved ruling on Plaintiff's Request for Entry of Default against PMSI [18]

for 30 days, during which Plaintiff was required to submit proof of service on

PMSI.

#### a.    *Denial of Motion to Recuse*

In its July 2011 Order, the Court first addressed the recusal issue.

Plaintiff advanced a number of arguments for recusal, none of which the Court

found availing.  After examining each in turn, along with the standard for

recusal, the Court concluded—and still concludes—that Plaintiff's arguments are without merit.  First, she stated that the undersigned acted improperly by permitting Defendants to remove the case.  (Dkt. [27] at 7-10.)  According to Plaintiff, the case is not removable because it is "extricably intertwined with a State Court Appeal."  (Id. at 14-25.)  Plaintiff also argued that the "Court lacks jurisdiction and has acted in a manner inconsistent with due process of law" by permitting removal and granting Prommis an extension of time to respond without considering whether "Plaintiff had filed an Objection," which she believes shows that she does not have "an impartial and interested tribunal." (Id. at 12, 16-18.)  She asserted that the undersigned appears partial to Defendants, and finally, pursuant to 28 U.S.C. §§ 144 and 455, it appears that Plaintiff believes that the undersigned suffers from "personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts."  (Id. at 12-14; 18-19.)

The propriety of recusal in a federal case is governed by two distinct statutes: 28 U.S.C. § 144 and 28 U.S.C. § 455.  The Court analyzed each standard in its Order.

9

### i.    28 U.S.C. § 144

Section 144 provides:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144.

If a litigant submits a sufficient affidavit and certificate and there are legally sufficient grounds for recusal, then recusal is mandatory; the presiding judge may take no further action in the litigant's case. See United States v. Alabama, 828 F.2d 1532, 1540 (11th Cir. 1987) (discussing legislative changes to § 144 that made "the benefit of the doubt . . . resolved in favor of recusal"). The statute's requirements, however, are strictly enforced. See, e.g., United States v. Sykes, 7 F.3d 1331, 1339 (7th Cir. 1993) ("Because the statute 'is

heavily weighed in favor of recusal,' its requirements are to be strictly

construed to prevent abuse." (quoting United States v. Balistrieri, 779 F.2d

1191, 1199 (7th Cir. 1985))).  Moreover, while the Court must take as true all of

the facts stated in the affidavit "even when the [C]ourt knows these allegations

to be false," Alabama, 828 F.2d at 1540, the statements at issue must be such

"that [they] would convince a reasonable person that bias actually exists."

Christo v. Padgett, 223 F.3d 1324, 1333 (11th Cir. 2000).  The alleged facts

must be "material and stated with particularity" and "show that the bias is

personal, as opposed to judicial, in nature."  Alabama, 828 F.2d at 1540.

Here, when analyzed under § 144, Plaintiff's motion fails for several

reasons.  First, it lacks a certificate of counsel stating that it is submitted in good

faith, as is required by 28 U.S.C. § 144.  In light of the mandatory and

automatic nature of recusal under the statute, its potential for abuse, and the

availability of other statutory mechanisms pursuant to which an unrepresented

litigant may seek the recusal of a federal judge, the absence of such a certificate

has proven fatal to the § 144 motions of even pro se litigants.  See, e.g.,

Williams v. N.Y.C. Hous. Auth., 287 F. Supp. 2d 247, 249 (S.D.N.Y. 2003)

(dismissing a pro se plaintiff's motion for recusal because it lacked a certificate

11

of counsel); <u>Heimbecker v. 555 Assocs.</u>, No. 01-6140, 2003 WL 21652182, at

*4 (E.D. Pa. Mar. 26, 2003) (finding a pro se party's motion for recusal to be

insufficient because it was not accompanied by a certificate of counsel).

Therefore, in light of the motion's procedural deficiencies, there is no arguable

basis for appealing the Court's denial of Plaintiff's motion.

 Moreover, even looking beyond those procedural failings, as the Court

did in its earlier Order [36], any recusal argument under § 144 is meritless.

Plaintiff's allegations of personal bias and prejudice rested predominantly on

her case's removal to federal court, perceived errors in the docket, and

disagreement with the Court's adjudication of the case so far.  (Dkt. [27] at 3-

18.)  Plaintiff believes that the undersigned harbors personal bias towards her or

personal favor towards Defendants due to the Court's past rulings in

Defendants' favor.  (<u>Id.</u> at 12-14, 16-18.)

 The undersigned harbors no personal animus towards Plaintiff, and prior

decisions reflect no more than the undersigned's efforts to fairly and correctly

apply the law to the case.  Even if the Court were to accept these allegations as

true, allegations of this sort do not establish the type of bias necessary to sustain

a § 144 motion.  It is settled that prior adverse judicial rulings supply no

independent basis for recusal.  See, e.g., United States v. Merkt, 794 F.2d 950, 960–61 (5th Cir. 1986) (concluding that prior judicial rulings in a prior case "offer no basis for recusal"); Giladi v. Strauch, No. 94 Civ. 3976 (LAP), 1996 WL 18840, at *5 (S.D.N.Y. Jan. 18, 1996) (" '[R]epeated rulings against a litigant, no matter how erroneous and how vigorously and consistently expressed, are not a basis for disqualification of a judge on the grounds of bias and prejudice.' "  (quoting United States v. IBM Corp., 475 F. Supp. 1372, 1381 (S.D.N.Y. 1979))).  Accordingly, under 28 U.S.C. § 144 there is no arguable legal issue to appeal because Plaintiff's motion was procedurally deficient and failed to articulate any proper basis for recusal.

### ii.     28 U.S.C. § 455

Analyzed under 28 U.S.C. § 455, Plaintiff's Motion to Recuse [27] fares no better.  Section 455 requires recusal of a judge in a host of specific circumstances that are not present here and "in any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. § 455.  Although § 455 "liberalize[d] greatly the scope of disqualification in federal courts," Murray v. Scott, 253 F.3d 1308, 1310 (11th Cir. 2001) (alteration in original) (quoting Alabama, 828 F.2d at 1541), and relieves litigants of the strict

13

procedural predicates mandated by § 144, it does not invite recusal whenever it is requested by a party. Rather, recusal under subsection (a) is appropriate only where "an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." United States v. Patti, 337 F.3d 1317, 1321 (11th Cir. 2003) (internal quotation mark omitted) (quoting Parker v. Connors Steel Co., 855 F.2d 1510, 1524 (11th Cir. 1988)).

Importantly, unlike in the context of § 144, it is the facts, not the movant's allegations, that control the propriety of recusal. See id. (explaining the importance of actual facts in adjudicating a § 455 motion to recuse); United States v. Cerceda, 188 F.3d 1291, 1293 (11th Cir. 1999) ("A charge of partiality must be supported by some factual basis . . . . Recusal cannot be based on 'unsupported, irrational or highly tenuous speculation.' " (quoting In re United States, 666 F.2d 690, 694 (1st Cir. 1981))); Weatherhead v. Globe Int'l, Inc., 832 F.2d 1226, 1227 (10th Cir. 1987) ("Allegations under [§ 455] need not be taken as true."). The rule is self-enforcing, and motions to recuse under § 455, while they may be referred to a judicial colleague for review, are typically decided by the presiding judge. See United States v. Craig, 853 F. Supp. 1413,

14

1414-15 (S.D. Fla. 1994) (noting that a judge has discretion either to refer a matter to another judge or to rule on a motion herself).

Ultimately, Plaintiff's assertions about the appearance of partiality rest only on her perceived mistakes in the undersigned's adjudication, errors in the docket, and her case's removal.  (Dkt. [27] at 3-18.)  But just like in the context of § 144, such contentions do not warrant recusal under § 455.  See, e.g., Hepperle v. Johnston, 590 F.2d 609, 614 (5th Cir. 1979) (holding that prior rulings of the district court cannot support recusal under § 455).  As the Court stated in its Order, "while the Court is mindful of the importance of avoiding even the appearance of partiality, it is of the view that no reasonable observer, fully apprised of the facts, could question its impartiality in the instant action." (Dkt. [36] at 10-11.)  On the contrary, "[t]he Court's decisions have necessarily flowed from the merits of each issue."  (Id. at 11.)  Because Plaintiff has pointed to no facts that could arguably call into question the Court's impartiality in this case, the Court finds that an appeal on this ground is not taken in good faith.

15

*b.*     *Denial of Motion to Remand*

In her Motion to Remand [7], Plaintiff argued that "defendants failed to adhere to 28 U.S.C. § 1446(a)" and did not include "a copy of all process, pleadings, and orders served upon each defendant or defendants in such action" when Defendants removed the case.  (Dkt. [7] at 4.)  Furthermore, she argued that the Rooker-Feldman Doctrine, Younger Abstention, and principles of federalism and comity compel the Court to remand the case.  (Id. at 4-7.) Plaintiff also argued that Kelly Atkinson of Troutman Sanders, LLP—who represents four of the defendants—did not have standing to remove the entire case because she does not represent all Defendants.  (Id. at 7-8.)  Next, according to Plaintiff, this case involves only Georgia law and is erroneously marked as a Truth in Leanding case on the Civil Cover Sheet of Defendants' Notice of Removal.  (Dkt. [1-2] at 8.)  Finally, Plaintiff raised several issues with the docket, including that Defendants did not include the proofs of service that Plaintiff had filed in the court; that Plaintiff has not filed a motion for a preliminary injunction or temporary restraining order; and that Plaintiff was not notified when her case was reassigned from the Honorable Orinda D. Evans.

16

The Court rejected each of these arguments, none of which presents an issue with any merit on appeal.

First, Defendants were not required to include any returns of service when they removed.  28 U.S.C. § 1446(a) requires "only that the removing party file 'copies of all process, pleadings and orders *served upon* him or them in such action.' "  Usatorres v. Marina Mercante Nicaraguenses, S.A., 768 F.2d 1285, 1286 (11th Cir. 1985) (emphasis added) (quoting 28 U.S.C. § 1446(a)).  Returns of service are not served upon a defendant.  Tebbetts v. Blue Cross Blue Shield of Ala., No. 2:07-CV-925-MEF, 2008 WL 4080768, at *3 (M.D. Ala. Sept. 2, 2008).  Therefore, Defendants' failure to file returns of service did not violate § 1446.  Id. at *4.

Plaintiff's assertion that Defendants BNY, JPMorgan, MERS, and Litton did not have standing to remove the case for PMSI and Prommis is also unavailing.  To properly remove a case, "[t]he unanimity [rule] mandates that in cases involving multiple defendants, all defendants must consent to removal."  Russell Corp. v. Am. Home Assurance Co., 264 F.3d 1040, 1044 (11th Cir. 2001).  Although "[a]ll of the defendants in the state court action must consent to the removal, and the notice of removal must be signed by all of the

17

defendants, . . . other forms of manifested consent may be acceptable to the federal court."  Demmons v. Fulton Cnty., No. 1:09-CV-2312-TWT-WEJ, 2010 WL 3418325, at *1 n.1 (N.D. Ga. Aug. 2, 2010) (quoting 14C CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3730 (4th ed. 2009)). For example, when a defendant files an answer or a motion to dismiss without having signed the notice of removal, "a sufficient basis exists for concluding" that the defendant consented to removal because "he is purposefully availing himself of [a] court's mechanisms."  Harchelroad Motors, Inc. v. Universal Underwriters Ins. Co., No. 7:11CV5002, 2011 WL 2447093, at *5 (D. Neb. May 16, 2011); see also Demmons, 2010 WL 3418325, at *1 n.1 (finding a defendant's filing of an answer to constitute consent to removal).  Therefore, although Prommis did not sign the Notice of Removal [1], it consented to removal when it filed its Motion to Dismiss Plaintiff's Complaint [5].

The Court noted that PMSI, however, had not appeared before any court in this case, nor had it consented to removal.  But because it was unclear if PMSI had even been served,[3] or whether it continued to exist at all, the Court

---

[3]Plaintiff had also filed a Motion for Entry of Default [18] against PMSI. Although Plaintiff claimed that PMSI was properly served and that she had filed proof of service, the Court was unable to locate that proof in the record.  The Court then

reasoned that Defendants did not need PMSI's consent to remove the case

because consent is not required "of a defendant who has not yet been served

with process" or "of a formal or nominal defendant." White v. Bombardier

Corp., 313 F. Supp. 2d 1295, 1299-1300 (N.D. Fla. 2004).

Plaintiff's arguments that the Rooker-Feldman doctrine, Younger

Abstention, and principles of federalism and comity compel the Court to

remand the case are likewise legally meritless.  The Rooker-Feldman doctrine,

which recognizes that federal district courts do not have jurisdiction to act as

appellate courts, Green v. Jefferson Cnty. Comm'n, 563 F.3d 1243, 1249 (11th

Cir. 2009), simply does not apply.  That doctrine precludes district courts from

reviewing final state court decisions.  Id.  The Supreme Court clarified the

scope of the Rooker-Feldman doctrine and held that it is "confined to cases of

the kind from which the doctrine acquired its name: cases brought by state-court

losers complaining of injuries caused by state-court judgments rendered before

the district court proceedings commenced and inviting district court review and

rejection of those judgments."  Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,

---

reserved ruling on the motion and ordered Plaintiff to produce proof of service within
30 days.  (Dkt. [36] at 16.)  The Court's ultimate resolution of the default issue is
examined below in Part II.B.3, *infra*.

AO 72A
(Rev.8/82)

544 U.S. 280, 284 (2005).  This Court has not acted in an appellate capacity in this matter; rather, this case was originally filed in state court and removed to federal court.  No courts have applied the Rooker-Feldman doctrine in these circumstances.  Furthermore, assuming that there was an ongoing state proceeding that implicated Younger Abstention and federalism concerns, that proceeding has ended, making adjudication of the present case proper.  (Dkt. [31], Ex. A, at 10.)

Plaintiff's contention that the case does not involve federal law is also without merit.  Her Complaint [2] alleges that Defendants violated the Truth in Lending Act ("TILA"), the Real Estate Settlement Procedures Act ("the RESPA"), the Fair Debt Collection Practices Act ("the FDCPA"), and the civil Racketeer Influenced and Corrupt Organizations Act ("RICO").  (Dkt. [2] at ¶¶ 97-98, 112-16).  Each of these federal statutes indisputably implicates a federal question under 28 U.S.C. § 1331.

Finally, any arguments "based on the docket clerk's description of [a] filing [are] frivolous" because "ultimately the Court reviews the contents of a party's filing and makes its own determinations about the nature of the filing and the appropriate action to be taken."  Hagner v. Seminole Cnty., No.

20

6:07-CV-1464-ORL-31UAM, 2007 WL 3407387, at *3 (M.D. Fla. Nov. 13, 2007).  In sum, all of Plaintiff's arguments in favor of remand are frivolous.

c.    <em>Grant of Motions to Dismiss</em>

<strong>i.    <em>Motion to Dismiss Standard</em></strong>

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  While this pleading standard does not require "detailed factual allegations," mere labels and conclusions or "a formulaic recitation of the elements of a cause of action will not do."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  In order to withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 570).  A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged.  <u>Id.</u>

"At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  <u>Bryant v. Avado Brands, Inc.</u>, 187 F.3d 1271, 1273

21

n.1 (11th Cir. 1999).  However, the same does not apply to legal conclusions set

forth in the complaint.  Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260

(11th Cir. 2009) (citing Iqbal, 556 U.S. at 678).  "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not

suffice."  Iqbal, 556 U.S. at 678.  Furthermore, the court does not "accept as

true a legal conclusion couched as a factual allegation."  Twombly, 550 U.S. at

555.

### ii.      Count I: Fraud

Plaintiff states that "every document in the County land records

pertaining to [her] property, with the exception of one, that has been Notarized,

has been done so in conflict with the law."  (Dkt. [2] ¶¶ 18-20.)  She also

alleges that Defendants lied and committed fraud in the course of foreclosure.

(Id. ¶ 46.)  To succeed on a claim for fraud:

> the plaintiff must show that the defendant made a false, material
> representation of an existing fact with knowledge that it was false
> or with reckless disregard as to whether it was true and that it was
> with the intent that it be acted upon by the plaintiff; and, further,
> that the plaintiff acted upon the misrepresentation in reasonable
> reliance of its truth in a manner reasonably foreseeable by the
> defendant and to the plaintiff's proximate injury.

Perry v. Perry, 648 S.E.2d 193, 196 (Ga. Ct. App. 2007) (quoting Brown v.

Techdata Corp., 234 S.E.2d 787, 790 (Ga. 1977)).  Although claims of fraud

generally have a four-year statute of limitations, the period of limitation may be

tolled.  Anthony v. Am. Gen. Fin. Servs., Inc., 697 S.E.2d 166, 176 (Ga. 2010)

(citing O.C.G.A. § 9-3-31).  To establish fraudulent concealment and to toll the

statute of limitations, Plaintiff must prove that: "(1) the defendant committed

actual fraud; (2) the fraud concealed the cause of action from the plaintiff; and

(3) the plaintiff exercised reasonable diligence to discover his cause of action

despite his failure to do so within the statute of limitation." Daniel v. Amicalola

Electric Membership Corp., No. S11A0019, 2011 WL 2517326, at *6 (Ga. June

27, 2011).  For such a claim, the period of limitations runs "only from the time

of the plaintiff's discovery of the fraud."  O.C.G.A. § 9-3-96.

Therefore, even assuming that the allegedly forged documents were

fraudulent, Plaintiff's claim is barred by the four-year statute of limitations

because the Security Deed was executed on December 17, 2004.  (Dkt. [2], Ex.

J, at 47.)  The alleged fraud was not concealed from her, and thus she could

have discovered with due diligence the alleged defects in the documents before

the statute of limitations ran in 2008.  Furthermore, Plaintiff failed to explain or

23

cite any authority for how the alleged defects—such as Plaintiff including a middle initial in one of her signatures and not another—conflict with the law or amount to fraud.  (Dkt. [2] ¶¶ 18-20.)

Aside from any statute of limitations problems, Plaintiff's allegations fail to state a claim.  Plaintiff alleges that Defendants filed "numerous documents within real property records [that] have been falsified, forged, [or] manipulated," and that Defendants commenced and then halted foreclosure multiple times, all while assuring her that no sale was being pursued, thus preventing her from acting to protect the Property.  (Id. ¶¶ 37, 44-46.) Generally, fraud is not actionable when predicated upon either promises to perform some act in the future or a mere failure to perform promises made.  J. Kinson Cook of Ga., Inc. v. Heery/Mitchell, 644 S.E.2d 440, 447 (Ga. Ct. App. 2007) (quoting Hamilton v. Advance Leasing & Rent-A-Car, Inc., 432 S.E.2d 559, 561 (Ga. Ct. App. 1993)).  "Otherwise any breach of a contract would amount to fraud."  Id. (quoting Hamilton, 432 S.E.2d at 561).  Indeed, Defendants' alleged statements are not actionable because they were promises not to act in the future.  See Infrasource, Inc. v. Hahn Yalena Corp., 613 S.E.2d 144, 148 (Ga. Ct. App. 2005) ("[A] false representation made by a defendant, to

24

be actionable, must relate to an existing fact or a past event.").  Moreover, even if these statements constituted actual fraud, Plaintiff failed to show how her reliance on the promises injured her.  See Adams v. JPMorgan Chase Bank, No. 1:10-CV-04226-RWS, 2011 WL 2532925, at *3 (N.D. Ga. June 24, 2011) (reasoning that the mortgagor failed to show detrimental reliance on promises to reconsider a loan for refinancing because it did not change his existing obligations).

Lastly, Plaintiff failed to plead the alleged fraud with sufficient particularity in regard to who assured her that foreclosure was not being pursued and what statements constituted such an assurance.  See In re Coca-Cola Enters. Inc. Sec. Litig., 510 F. Supp. 2d 1187, 1195 (N.D. Ga. 2007) (noting that a complaint must plead "who, what, when, where and how" in regard to a statement for a fraud claim to satisfy Federal Rule of Civil Procedure 9(b) (quoting Garfield v. NDC Health Corp., 466 F.3d 1255, 1262 (11th Cir. 2006))).  Given the above flaws of Plaintiff's fraud claim, there is no arguable issue for appeal.

### iii.    Count II: Theft by Deception

O.C.G.A. § 16-8-3 proscribes the offense of theft by deception, which

25

occurs "when [a person] obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property."  However, "the violation of a criminal statute 'does not automatically give rise to a civil cause of action.' "  Am. Gen. Life and Accident Ins. Co. v. Ward, 509 F. Supp. 2d 1324, 1330 (N.D. Ga. 2007) (quoting Oswald v. Am. Nat'l Can Co., 392 S.E.2d 26, 27 (Ga. Ct. App. 1990)).  For there to be civil liability under a criminal statute, the statute must evidence intent to create a private cause of action.  See id. ("[W]here a criminal statute evidences no intent to create a private cause of action, civil liability 'must be determined under the applicable provisions of state tort law,' if any."  (alteration in original omitted) (quoting Rolleston v. Huie, 400 S.E.2d 349, 351 (Ga. Ct. App. 1990))).  Because O.C.G.A. § 16-8-3 does not purport to create a private cause of action, a claim under this statute is indisputably meritless.

### iv.    Count III: Dishonor in Commerce

The Court dismissed Plaintiff's dishonor in commerce claim because she failed to cite any authority for the proposition that Georgia law furnishes such a cause of action.  (Dkt. [36] at 25.)  Even if the Court construes her claim as one for wrongful foreclosure, that claim fails as well.  (Id.)  To assert a claim of

26

wrongful foreclosure, Georgia law requires the plaintiff "to establish a legal duty owed to it by the foreclosing party, a breach of that duty, a causal connection between the breach of that duty and the injury it sustained, and damages." <u>Heritage Creek Dev. Corp. v. Colonial Bank</u>, 601 S.E.2d 842, 844 (Ga. Ct. App. 2004). Furthermore, under Georgia law, "[i]t is clear that a security deed which includes a power of sale is a contract and its provisions are controlling as to the rights of the parties thereto and their privies." <u>Gordon v. S. Cent. Farm Credit, ACA</u>, 446 S.E.2d 514, 515 (Ga. Ct. App. 1994).

Plaintiff argued that Defendants had no legal right to foreclose and should have made a greater effort to consider her tender offer. (Dkt. [8] at 18-20.) Plaintiff's Promissory Note stipulates that, in the event of default, "the Note Holder may require [Plaintiff] to pay immediately the full amount of Principal which has not been paid and all the interest [she] owe[s] on that amount." (Dkt. [3-2] at 4.) Plaintiff also granted the Security Deed to "MERS . . . and the successors and assigns of MERS, with power of sale." (Dkt. [3-3] at 4.) Plaintiff admits that she was in default and was unable to come to an agreement on a loan modification. (Dkt. [2] at ¶ 47.) Thus, as stipulated by the Note and Security Deed, Defendants had a right to pursue foreclosure. Finally,

to the extent that Plaintiff's claim rests on Defendants' failure to produce the

Note, the Georgia Supreme Court has confirmed that "the deed holder possesses

full authority to exercise the power of sale upon the debtor's default, regardless

of its status with respect to the note." <u>You v. JP Morgan Chase Bank, N.A.</u>, 743

S.E.2d 428, 433 (Ga. 2013).  In sum, Plaintiff's allegations in Count III fail to

state any arguable claim.

### v.  *Count IV: Failure to Disclose*

In Count IV, Plaintiff asserted claims under TILA, RESPA, and the

FDCPA, all of which the Court found meritless.  The Court dismissed

Plaintiff's TILA and RESPA claims as untimely because the statute of

limitations had run.  (<u>See</u> Dkt. [36] at 27-28.)  Therefore, these claims are

without merit.  It is unclear on what basis Plaintiff brings her FDCPA claim, as

she only alleges generally that Defendants violated the statute.  (Dkt. [2] ¶ 97.)

The FDCPA

> regulates the practices of "debt collectors," a term that is defined as
> excluding repossessors and other enforcers of security interests, 15
> U.S.C. § 1692a(6), except that a repossessor may not take or
> threaten to take nonjudicial action to dispossess a person of
> property if "there is no present right to possession of the property
> claimed as collateral through an enforceable security interest." [15
> U.S.C.] § 1692f(6)(A).

28

Nadalin v. Auto. Recovery Bureau, Inc., 169 F.3d 1084, 1085 (7th Cir. 1999).

In foreclosing on the Property, Defendant BNY had a present right

to possession, as that right was assigned to it along with the Security Deed by

PMSI on June 2, 2008.  (Dkt. [2] at 48.)  But Plaintiff did not allege that

Defendants were debt collectors subject to the FDCPA, nor did she allege

specifically how Defendants violated the statute.  Accordingly, Plaintiff alleges

no arguable basis for stating a claim under the FDCPA.

### *vi.*      *Count V: Civil RICO*

To succeed on a civil RICO claim, a plaintiff must prove each of the

following four elements: (1) conduct (2) of an enterprise (3) through a pattern

(4) of racketeering activity.  Ledford v. Austin, No. 1:09-CV-3237-RWS, 2011

WL 1808148, at *3 (N.D. Ga. May 11, 2011).  "RICO defines racketeering

activity as any act indictable under 18 U.S.C. §§ 1341 and 1343, the mail and

wire fraud provisions, or 'any offense involving . . . fraud in the sale of

securities.' "  Durham v. Bus. Mgmt. Assocs., 847 F.2d 1505, 1511 (11th Cir.

1988) (citing 18 U.S.C. § 1961).  Plaintiff alleges that

> Defendants' actions and use of multiple corporate entities, multiple
> parties, and concerted and predetermined acts and conduct specifically
> designed to defraud Plaintiff constitutes an "enterprise," with the aim and

29

> objective of the enterprise being to perpetrate a fraud upon the Plaintiff
> through the use of intentional nondisclosure, material misrepresentation,
> and creation of fraudulent loan documents.

(Dkt. [2] ¶ 113.)  The Court has already found that Plaintiff's claim lacks the

sufficient factual plausibility to satisfy Federal Rule of Civil Procedure 8(a)

because "courts have concluded that general allegations of fraud and conspiracy

. . . associated with the mortgage lending industry . . . are not viable claims

[under RICO]."  <u>Saunders v. Mortg. Elec. Registration Sys., Inc.</u>, No. 1:10-CV-

3419-TWT-RGV, 2011 WL 1335824, at *11 (N.D. Ga. Mar. 11, 2011) (citing

several cases in support).  Plaintiff's allegations thus offer no factual basis to

support the elements of a RICO claim.

### vii.    Count VI: Conversion

Plaintiff also alleges that Defendants converted her Property because they

"wrongfully and illegal[ly] performed a Sale Under Power."  (<u>Id.</u> ¶ 118.)  To

state a claim for conversion, Plaintiff must establish: "(1) title to the property or

the right of possession, (2) actual possession in the other party, (3) demand for

return of the property, and (4) refusal by the other party to return the property."

<u>Trey Inman & Assocs. v. Bank of Am.</u>, 702 S.E.2d 711, 716 (Ga. Ct. App.

2010) (quoting <u>Internal Med. Alliance, LLC v. Budell</u>, 659 S.E.2d 668, 675

(Ga. Ct. App. 2008)).  However, because Plaintiff's wrongful foreclosure claim is meritless, Plaintiff has no right to possess the Property and thus cannot satisfy the elements of conversion.

### viii.    Count VII: Breach of Contract and Theft

According to Plaintiff, the assignment of servicing rights and the foreclosure were improper because "the intent of the agreement was that the original party who funded the alleged loan per the bookkeeping entries was to be repaid the money."  (Dkt. [2] ¶ 128.)  "The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken."  Duke Galish, LLC v. Manton, 707 S.E.2d 555, 559 (Ga. Ct. App. 2011).  The Security Deed plainly permitted assignment.  Defendants complied with the Security Deed and Promissory Note as they pursued foreclosure, and Defendants did not violate any express contract provision.  And to the extent that Plaintiff attempts to state a claim for theft by taking under the criminal statute O.C.G.A. § 16-8-2, that claim is without merit because the statute does not provide a civil remedy.

31

### ix. *Denial of Injunctive Relief*

In light the Court's conclusion that an appeal of the above claims is frivolous, an appeal requesting injunctive relief is likewise not taken in good faith. There is thus no arguable issue related to the Court's July 2011 Order [36] that Plaintiff could raise on appeal.

### 3. Appeal of Order [52] Setting Aside Default

The Court initially directed the Clerk to enter default against PMSI after Plaintiff filed proof of service on PMSI through the Secretary of State of Georgia. (See Dkt. [38].) The Court, however, set aside its entry of default on June 18, 2012, because service was insufficient. Under Rule 55(c), the Court may set aside a default for "good cause." Fed. R. Civ. P. 55(c). In determining whether "good cause" exists, courts focus on three factors: "(1) whether the default was culpable or willful; (2) whether setting it aside would prejudice the non-defaulting party; and (3) whether the party in default has a meritorious defense." Ritts v. Dealers Alliance Credit Corp., 989 F. Supp. 1475, 1480 (N.D. Ga. 1997). Courts have also considered "whether the defaulting party acted promptly to correct the default." Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion, 88 F.3d 948, 951

(11th Cir. 1996). "Underlying consideration of the appropriateness of setting aside a default is the fact that defaults are not favored in federal court and trials on the merits are the preferred method for resolving disputes." Id. And "[w]here service of process is insufficient, the entry of default is void and must be set aside." Insituform Tech., Inc. v. AMerik Supplies, Inc., 588 F. Supp. 2d 1349, 1352 (N.D. Ga. 2008) (citing Varnes v. Local 91, Glass Bottle Blowers Ass'n, 674 F.2d 1365, 1368 (11th Cir. 1982)).

The Court found that there would be no prejudice against Plaintiff in setting aside the default and that PMSI had a meritorious defense. (Order, Dkt. [52] at 4-5.) More significantly, the Court held that PMSI's default was not culpable or willful because service of process was insufficient. (Dkt. [52] at 7.) It was undisputed that PMSI was a foreign corporation whose registration to transact business in Georgia had been withdrawn by the time Plaintiff filed suit. (Id. at 6.) As such, Georgia law required Plaintiff to serve PMSI both by serving the Secretary of State of Georgia and by "mail[ing] a copy of the process to the chief executive officer, chief financial officer, the secretary of the foreign corporation, or a person holding a comparable position." O.C.G.A. § 14-2-1520(b)-(c). While Plaintiff did serve the Secretary of State, she did not

offer any evidence that she mailed a copy of the Summons and Complaint to any of PMSI's corporate officers, nor did PMSI ever receive the documents. An appeal of the decision to set aside default due to insufficient service is thus frivolous because Plaintiff did not comply with the service requirements in O.C.G.A. § 14-2-1520(b) and (c).

### 4.     Appeal of Order [65] Dismissing Case

Finally, the Court finds that an appeal of the Court's October 25 Order dismissing the case without prejudice is legally meritless.  "[A] federal district court possesses the inherent authority to dismiss an action for want of prosecution . . . ."  Betty K Agencies, Ltd. v. M/V MONADA, 432 F.3d 1333, 1337 (11th Cir. 2005) (quoting Gonzalez v. Firestone Tire & Rubber Co., 610 F.2d 241, 247 (5th Cir. 1980)).  And under the Local Rules, the Court may dismiss for want of prosecution if "[a] case has been pending in this court for more than six (6) months without any substantial proceedings of record, as shown by the record docket or other manner, having been taken in the case." LR 41.3(A)(3).  The Court clearly had a basis to dismiss Plaintiff's Complaint because at the time of dismissal, the case had been pending for over a year without any substantial proceedings taking place.  Nor had Plaintiff taken steps

34

to perfect service on PMSI despite the Court's conclusion that service was insufficient.

Moreover, the Court notes that it dismissed without prejudice, thus preserving Plaintiff's ability to refile her claims.  By contrast, the sanction of dismissal *with prejudice* would have required the Court to make additional findings because such an extreme sanction is only proper when "(1) a party engages in a clear pattern of delay or willful contempt (contumacious conduct); and (2) the district court specifically finds that lesser sanctions would not suffice."  World Thrust Films, Inc. v. Int'l Family Entm't, Inc., 41 F.3d 1454, 1456 (11th Cir. 1995).  But here the Court did not opt for such an extreme measure.  Because the Court's decision was within its inherent power and fit squarely within the Local Rules, an appeal of this issue has no legal merit and is thus frivolous.  Because Plaintiff presented no arguable issue for appeal, the Court certifies that Plaintiff's Application to Appeal In Forma Pauperis [68] is not taken in good faith and is therefore due to be **DENIED**.

### Conclusion

In accordance with the foregoing, Plaintiff's Application to Appeal In Forma Pauperis [68] is **DENIED**.

35

**SO ORDERED**, this   8th   day of January, 2014.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)